### JAMES S. NEGLEY v. HARRIET W. SIMPSON, EXECUTRIX OF THOMAS P. SIMPSON, DECEASED.

Simpson and Negley having separate claims against the same corporation, which were contested by certain stockholders who had control of the corporation, Simpson covenanted with Negley that in any settlement which might be made of Simpson's claims Negley's claim should be included. *Held*—

1. That the covenant bound Simpson's executrix.

2. That an assignment of Simpson's claim by his executrix to the contesting stockholders or their representatives, for a cash consideration, was a settlement within the meaning of the covenant.

3. That on such settlement Negley became entitled to recover from Simpson's executrix the amount of his claim against the corporation, although it had not been included in the settlement.

---

On contract. On case certified by the Essex Circuit Court.

Argued at February Term, 1893, before BEASLEY, CHIEF JUSTICE, and Justices DIXON, REED and MAGIE.

For the plaintiff, *R. Floyd Clarke,* of New York.

For the defendant, *John W. Taylor.*

The opinion of the court was delivered by

DIXON, J.   On June 5th, 1884, Thomas P. Simpson and James S. Negley entered into a contract under seal, which, among other things, recited that Simpson was then engaged in the construction of the railroad known as the New Castle Northern, in the State of Pennsylvania; that litigation was then pending in which certain stockholders of said railroad company were seeking the cancellation of Simpson's construction contract, and it was believed that Simpson's claim would be followed by a judicial sale of the railroad property and franchises; that Negley had furnished to said company a certain valuable right of way for $114,000; that it was the desire of Simpson, in consideration of said right of way so transferred and of the payment by said Negley of certain sums of money to and on account of the said company, to secure to the said Negley the amounts thereof; and therefore it was agreed that if Simpson should become the owner of said property he would bear the relation of trustee to said Negley for certain specified purposes, and "that if a settlement of the claim of said Simpson against said company shall be made, with or without suit, judicial sale or otherwise, the amount of such settlement shall also include all moneys actually expended by said Negley, as shown by the vouchers therefor."

On August 28th, 1884, the litigation referred to in the above-mentioned contract resulted in a decree that Simpson's construction contract should be canceled, but that he was entitled to compensation for the work done under it, and on March 20th, 1885, a decree was made awarding him $56,643.77 for such compensation. On May 13th, 1885, Simpson's adversaries appealed from the decree of March 20th. On July 13th, 1886, a decree was made for the sale of the railroad, the proceeds to be held in court to abide the appeal.

On July 26th, 1886, Simpson died, and Harriet W. Simpson became his executrix. On September 2d, 1886, the executrix assigned to G. W. Johnson and others the above-

mentioned decree in favor of Thomas P. Simpson and all money secured thereby, for the sum of $20,000 cash paid to her, and certain covenants made by the assignees. The assignees represented the stockholders, who, according to the recital in the Simpson-Negley contract, had sought the cancellation of the Simpson construction contract.

The present suit is brought by Negley against the executrix, to recover the amount of money actually expended by Negley on account of said railroad company, which amount is fixed by the stipulation of the parties at $5,000.

The first objection made against a recovery by the plaintiff, is that the facts do not show "a settlement" of Simpson's claim against the company, within the meaning of the contract; that having been merely transferred to Johnson and others, it was not settled, but remained in full vigor against the corporation.

We think, however, that by the term "settlement" the parties meant any arrangement between Simpson and his opponents in the pending litigation, by which Simpson's concern in the litigation should end. It was their design that, in making any such arrangement, Simpson should not only be empowered, but should also be bound, to include Negley's claim for money expended, so that Negley might have, as an additional security, the likelihood that Simpson and his adversaries would adjust their differences. Perhaps if Simpson's adversaries had paid him the full amount of his decree, that would not have been a "settlement made" within the meaning of this contract, for, in that event, Simpson would have had no power to include Negley's claim, and it is hardly to be supposed that he contracted to do what it was evident he could not possibly do; but under any other conditions, where his consent was necessary for a settlement, it was his duty to withhold consent, unless Negley's claim was paid. Whether his settlement was made directly with the corporation, or indirectly with the stockholders behind the corporation, who were contesting his claims, could not have been deemed important by either Negley or Simpson.

The second objection urged against the plaintiff, is that Simpson's covenant was one for his personal services, and therefore was extinguished by his death.

We see no reason for thinking so. There was certainly no express covenant for his personal services, and it is to be implied that an agent or representative, empowered to settle Simpson's claim, could properly examine Negley's vouchers and include their amount in such settlement.

The last position of the defendant to be noticed is that Negley's claim remains unaffected by the settlement of Simpson's claim, and therefore his loss is only nominal.

The general rule for the measurement of damages on the breach of contract, is that the damages shall be such as will put the party in the same situation, pecuniarily, as he would have occupied if the contract had been performed. For this the defendant's contention seems to substitute a rule which will only leave the plaintiff no worse off than he would have been if the contract had not been made. Such a rule would deny to the plaintiff the benefit of his contract. It leaves out of view the right of the plaintiff to performance. If Simpson had performed his express covenant with Negley, he would have received the amount of Negley's claim for money expended, and the law would then have imposed upon him the duty of paying that amount to Negley. Negley can now be put in the same situation only by the law's laying upon Simpson's executrix the same duty.

The Essex Circuit Court should be advised that the plaintiff is entitled to recover against the defendant the sum of $5,000, with interest from January 15th, 1891, pursuant to the stipulation of the parties.